UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,                :    Case No. 08 CR 347 (NGG)
                                                      :
        -against-                                               :
                                                       :
MARTIN E. WEISBERG.                              :
-----------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF
# MARTIN E. WEISBERG'S MOTION TO DISMISS
# <u>COUNT ELEVEN OF THE INDICTMENT</u>

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York  10111
(212) 589-4200

*Attorneys for Defendant Martin E. Weisberg*

-i-

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

UNDISPUTED FACTS ALLEGED BY THE GOVERNMENT RELEVANT TO THIS
MOTION ..........................................................................................................................................2

I. PERSUASIVE CIRCUIT COURT AUTHORITY COMPELS DISMISSAL OF
THE SINGLE SECTION 1957 MONEY LAUNDERING COUNT IN THE
INDICTMENT ......................................................................................................3

    A. Standard for Motion to Dismiss..........................................................3

    B. The Government could never establish at trial that an amount greater than
$10,000 is traceable to "dirty" money with respect to the single monetary
transaction identified in count eleven of the Indictment ........................................4

    C. This Court should not follow the approach taken by the Third, Fourth and
Tenth Circuits ...............................................................................................13

    D. Even if this Court applied a proportionality rule as discussed in Loe, the
section 1957 count still must be dismissed ..........................................................13

## TABLE OF AUTHORITIES

Page

**Cases**

*Boyce Motor Lines, Inc. v. United States,*
  342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952)...................................................................3

*Broussard v. Southern Pac. Transp. Co.,*
  665 F.2d 1387, 1389 (5th Cir. 1982).....................................................................................14

*Francis v. Franklin,*
  471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.344 (1985) ..............................................................13

*Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 250 (1952) ...................................8

*Sandstrom v. Montana,*
  442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) .............................................................13

*Tot v. United States,*
  319 U.S. 463, 468-96, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943) ................................................13

*United States v. Abbell,*
  129 F.3d 1159, 1296, n. 5 (11th Cir. 2001) .............................................................................6

*United States v. Aleynikov,*
  2010 WL 3489383 (S.D.N.Y. 2010)....................................................................................3, 4

*United States v. Alfonso,*
  143 F.3d 772, 776-77 (2d Cir. 1998) ......................................................................................3

*United States v. Ali Saleh Kahlah Al-Marri,*
  230 F. Supp.2d 535, 538 (S.D.N.Y. 2002) .............................................................................3

*United States v. Allen,*
  129 F.3d 1159, 1165 (10th Cir. 1997)................................................................................6, 13

*United States v. Davis,*
  226 F.3d 346, 357 (5th Cir.2000) ....................................................................... 10, 12, 13, 14

*United States v. Haddad,*
  462 F.3d 783 (7th Cir. 2006) ...................................................................................................6

*United States v. Hanley,*
  190 F.3d 1017 (9th Cir. 1999) ............................................................................... 10, 11, 13

*United States v. Jamieson,*
  427 F.3d 394 (6th Cir. 2005) ...................................................................................................6

**TABLE OF AUTHORITIES**
**(continued)**

Page

*United States v. Johnson,*
   971 F.2d 562, 570 (10th Cir. 1992)..................................................................................7, 13

*United States v. Loe*, 248 F.3d 449 (5th Cir. 2001) ......................................................10, 13, 14

*United States v. Moore,*
   27 F.3d 969, 976 (4th Cir. 1994) ..............................................................................6, 7, 9, 13

*United States v. Rutgard,*
   116 F.3d 1270, 1291 (9th Cir. 1997)............................................................................passim

*United States v. Sokolow,*
   91 F.3d 396, 409 (3rd Cir. 1996) .......................................................................................7, 13

*United States v. Velastegui,*
   199 F.3d 590, 592 n. 2 (2d Cir.1999).......................................................................................3

*United States v. Yagman*, 502 F. Supp.2d 1084 (C.D. Cal. 2007)................................................11

**Statutes**

18 U.S.C. § 1957.......................................................................................................................passim

18 U.S.C. §§ 1956-1957.............................................................................................................passim

26 U.S.C. § 7201 or 7206..................................................................................................................4

**Rules**

43 Am. Crim. L.Rev. 739, 743 (2006 ..................................................................................................5

43 Am.Crim. L.Rev. at 745 ................................................................................................................6

Fed.R.Crim.P. 12(b) ...........................................................................................................................3

Defendant Martin E. Weisberg respectfully moves this court for an order dismissing count eleven of the Indictment, dated May 22, 2008, which alleges a single count of violating 18 U.S.C. § 1957, on the ground that the $200,000.00 that is the subject of that count was not "criminally derived property."

**Preliminary Statement**

At least two Circuit Courts of Appeals have held that where, as here, a bank account contains enough "clean" funds sufficient to cover a withdrawal, the government cannot prove beyond a reasonable doubt that the subject withdrawal contains the requisite "dirty" money. Here, the Government alleges in count eleven of the Indictment that Weisberg engaged in a "monetary transaction" involving a transfer of $200,000.00 out of the escrow account Weisberg had established and maintained for his former legal client SIAM Capital Management, Ltd. ("SIAM").

The SIAM escrow account was initially funded with $30 million wired by SIAM to Weisberg's designated account at JPMorgan Chase. There is no allegation by the Government that the $30 million entrusted to Weisberg by SIAM was derived from a crime or criminal activity. Rather, according to the Government's allegations in the Indictment, which are denied but accepted as true solely for purposes of this Motion, Weisberg derived approximately $1.6 million from his purported scheme to defraud SIAM, which represents the amount of interest allegedly earned in the account on the $30 million SIAM escrowed with Weisberg. Even assuming Weisberg's monetary transaction involving the $200,000.00 was unauthorized by SIAM, which is again denied, as a matter of law it cannot be a violation of 18 U.S.C. § 1957 because considerably more "clean" as opposed to "dirty" money was deposited in the escrow account from which the $200,000.00 was wired allegedly upon Weisberg's instruction. Because

1

the $200,000.00 identified in count eleven was not "criminally derived property" as defined in the statute at issue, and as interpreted by at least the Fifth and Ninth Circuits, count eleven must be dismissed as a matter of law.

While the Second Circuit has not addressed this issue, we respectfully submit that the Second Circuit would and must adopt the approach taken by the Fifth and Ninth Circuits discussed below, especially because the competing approach utilizing an irrefutable presumption of criminality is contrary to federal constitutional law.

### Undisputed Facts Alleged By The Government Relevant To This Motion

The Government alleges that SIAM, Weisberg's former client, deposited the sum of $30 million into an escrow account controlled by Weisberg. *See* Indictment ¶ 4, 6-7. The Government further alleges that Weisberg, a lawyer, engaged in a scheme to defraud SIAM in which he made several false and misleading statements to SIAM's representatives in order to conceal the fact that the money placed in escrow was earning interest, in the approximate total amount of $1.6 million over approximately fourteen months. *See id.* ¶¶ 6, 7, 9, 11 and 12. Finally, the Government alleges that Weisberg appropriated for himself approximately $1.3 million in interest that had accrued on the $30 million in principal deposited by SIAM in the escrow account during the period approximately from August 11, 2006 to December 21, 2007. *See id.* ¶¶ 7, 8 and 12.

The Government alleges only one count of violating 18 U.S.C. § 1957 against Weisberg in the Indictment. *See id.* ¶¶ 13-14. Specifically, it is alleged in count eleven that on or about June 4, 2007, Weisberg was involved in a financial transaction in the amount of $200,000 derived from the specified unlawful activity of wire or mail fraud. *See id.* ¶ 14. According to the Indictment, the monetary transaction involved a check payable to "Entity #1" written on a

certain "Suffolk Bank account number 181-00***-7." *Id.* According to documents produced to Weisberg by the Government, Weisberg supposedly caused $200,000 to be wired to a "Suffolk County National Bank" account to the same account number, 181-000***-7, just three days earlier on June 1, 2007. *See* MW USAO 208. There is no dispute that the account from which the $200,000 was wired was the SIAM escrow account at JPMorgan Chase, which is the subject of the Indictment and the charges against Weisberg. There are no other violations of section 1957 alleged in the Indictment.

I. **PERSUASIVE CIRCUIT COURT AUTHORITY COMPELS DISMISSAL OF THE SINGLE SECTION 1957 MONEY LAUNDERING COUNT IN THE INDICTMENT**

    A. **Standard for Motion to Dismiss**

A motion to dismiss an indictment targeted at the substance of the offense may be granted if, as present here, there is legal infirmity in the subject indictment. In judging the sufficiency of this Indictment, the Court takes the allegations included therein as true. "On a pretrial motion to dismiss, "the facts alleged by the government must be taken as true." *United States v. Aleynikov*, 2010 WL 3489383 (S.D.N.Y. Sept. 3, 2010) (*quoting United States v. Velastegui,* 199 F.3d 590, 592 n. 2 (2d Cir.1999)); *see also Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952). On a pretrial motion to dismiss, the Court may decide issues capable of determination without the trial of the general issue. *See United States v. Ali Saleh Kahlah Al-Marri*, 230 F. Supp.2d 535, 538 (S.D.N.Y. 2002) ("[O]on a Rule 12(b) motion, a court assesses the legal sufficiency of an indictment without considering the evidence the Government may introduce at trial.") (quoting *United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998)); Fed.R.Crim.P. 12(b). The Court therefore may dismiss counts of an indictment based upon legal infirmities or defects in the charging instrument, or based on a purely legal question.

3

It is appropriate and proper to grant a motion to dismiss a criminal count before trial when the undisputed evidence and allegations against the defendant as charged by the government could never establish the charged crime, even assuming all of the government's allegations against the criminal defendant as true. In other words, where, as here, there is no possibility that a rational juror could ever find beyond a reasonable doubt that the criminal defendant had actually committed the charged crime based on the required elements of the statutory violation, the relevant law and the undisputed facts, a motion to dismiss may be granted. *See Aleynikov*, 2010 WL 3489383 (dismissing one count of the indictment where the statutory language and the facts did not support a finding that defendant had committed a crime)

> **B.      The Government could never establish at trial that an amount greater than $10,000 is traceable to "dirty" money with respect to the single monetary transaction identified in count eleven of the Indictment.**

The federal money laundering statutes were enacted in 1986 in response to the war on drugs. *See* Money Laundering Control Act of 1986, Pub.L. No. 99-570 (Oct. 27, 1986) 100 Stat. 3207-18, *codified in part as amended at* 18 U.S.C. §§ 1956-1957; *see United States v. Rutgard*, 116 F.3d 1270, 1291 (9th Cir. 1997). Federal law has two statutes criminalizing money laundering: title 18 United States Code section 1956 (section 1956)[1] and title 18 United States

---

[1] "Section 1956 is the basic, and most frequently used, money laundering statute. It contains three subsections which criminalize three types of criminal activity: [section] 1956(a)(1) covers domestic financial transactions; subsection (a)(2) deals with international money laundering; and subsection (a)(3) was drafted to include government sting operations." Miller, *Federal Money Laundering Crimes — Should Direct Tracing of Funds Be Required?*, 90 Ky. L.J. 441, 443 (2001) (fns. omitted). Section 1956, in pertinent part, states: "(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity — [¶] (A)(i) with the intent to promote the carrying on of specified unlawful activity; or [¶] (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986 [26 U.S.C. § 7201 or 7206]; or [¶] (B) knowing that the transaction is designed in whole or in part — [¶] (i) to conceal or disguise the nature, the location, the source, the ownership, or

4

Code section 1957 (section 1957). Weisberg has been charged with only one count of violating Section 1957.

Section 1957 punishes a person who "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." § 1957(a). A "monetary transaction" includes a deposit or withdrawal. § 1957(f)(1). "'[C]riminally derived property' means any property constituting, or derived from, proceeds obtained from a criminal offense." § 1957(f)(2).

"Because the recipient need not actually exchange or launder the funds or have any specific intent to further or conceal unlawful activity, 1957(d) potentially criminalizes seemingly 'innocent' acts or commercial transactions. In enacting 1957(d), Congress intended to dissuade people from engaging in even ordinary commercial transactions with people suspected to be involved in criminal activity. However, 1957(a) does require that the violator 'knowingly'

---

the control of the proceeds of specified unlawful activity; or [¶] (ii) to avoid a transaction reporting requirement . . . ." is subject to specified fines and/or imprisonment.

"[T]he term 'knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity' means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law . . . ." § 1956(c)(1). "[T]he term 'transaction' . . . with respect to a financial institution includes a deposit, [or] withdrawal . . . ." § 1956(c)(3). "'[M]onetary instruments'" include "coin or currency of the United States or of any other country" as well as a personal checks. § 1956(c)(5).

"Offenses under [section] 1956(a)(1) are commonly known as 'transaction money laundering' offenses because the prohibited act is the financial transaction itself." McGuinn, *Money Laundering*, 43 Am. Crim. L.Rev. 739, 743 (2006).

In sum, section 1956 is violated when a person: (1) knowingly conducts a financial transaction, (2) the proceeds involved in the transaction are from a specified unlawful activity, and (3) the individual has the requisite mens rea. The requisite mens rea requirement is met by showing the defendant had the intent: (a) to promote the carrying on of a specified unlawful activity or (b) to violate the Internal Revenue Code and knew the transaction was designed to conceal the illegal source of the money, or avoid a transaction reporting requirement.

5

engage in a transaction involving criminally derived property." McGuinn, *supra,* 43 Am.Crim. L.Rev. at 745 (fns. omitted).

Due to differences in the federal statutes, some courts impose different tracing requirements for the money laundering statutes when funds from both illegal and legal sources are commingled in a single bank account.

"Section 1957 differs from section 1956 in two critical respects:  It requires that the property have a value greater than $10,000, but it does not require that the defendant know of a design to conceal aspects of the transaction or that anyone have such a design.  Due to the omission of a 'design to conceal' element, section 1957 prohibits a wider range of activity than money 'laundering,' as traditionally understood." *United States v. Allen*, 129 F.3d 1159, 1165 (10th Cir. 1997).

While these differences in the statutes have led courts to somewhat different approaches to tracing funds to an illegal source when legal and illegal funds are commingled in a single account, the federal courts do not require a precise correlation between cash obtained from an illegal source, for example, the tracing of a specific dollar bill and transfers into and out of a financial institution.  Regardless of the differences in the statutory requirements, the federal courts recognize that money is fungible. *See*, *e.g.*, *United States v. Abbell*, 129 F.3d 1159, 1296, n. 5 (11th Cir. 2001) (section 1956 prosecution); *United States v. Moore*, 27 F.3d 969, 976 (4th Cir. 1994) (section 1957 prosecution); *but see Rutgard, supra,* 116 F.3d at 1292 (fungibility of money does not itself justify lack of any tracing requirement in section 1957 prosecution).

There is significant disagreement among the Circuit Courts, however, as to what tracing is required in a section 1957 prosecution. *See United States v. Haddad*, 462 F.3d 783 (7th Cir. 2006) (noting disagreement); *United States v. Jamieson*, 427 F.3d 394 (6th Cir. 2005) (noting

6

disagreement). Some circuits have held that no tracing is required. *See*, *e.g.*, *United States v. Sokolow*, 91 F.3d 396, 409 (3rd Cir. 1996) (there is no "legal requirement that the government trace the funds constituting criminal proceeds when they are commingled with funds obtained from legitimate sources"); *Moore*, *supra,* 27 F.3d at 977 ("it may be presumed in such circumstances, as the language of section 1957 permits, that the transacted funds, at least up to the full amount originally derived from crime, were the proceeds of the criminal activity or derived from that activity"); *United States v. Johnson*, 971 F.2d 562, 570 (10th Cir. 1992) (there is no requirement that government "show that funds withdrawn from the defendant's account could not possibly have come from any source other than the unlawful activity.").

This Court, however, should follow the persuasive holdings of the Fifth and Ninth Circuits concerning how to treat "clean" and "dirty" commingled funds for purposes of a prosecution under 18 U.S.C. § 1957. The Ninth Circuit in *Rutgard, supra,* 116 F.3d 1270, adopted a well reasoned approach to what is required for a section 1957 conviction when the bank account at issue has in deposit both legal and illegally derived money. The *Rutgard* court began by noting the different proof requirements for sections 1956 and 1957:

> [Section] 1956(a)(1). For present purposes, five elements of [section] 1956 differentiate it from [section] 1957, the statute at issue here — its title, its requirement of intent, its broad reference to 'the property involved,' its satisfaction by a transaction that 'in part' accomplishes the design, and its requirement that the intent be to commit another crime or to hide the fruits of a crime already committed. [¶] Section 1957 has a different heading: 'Engaging in monetary transactions in property derived from specified unlawful activity.' It punishes by up to ten years' imprisonment and a fine anyone who: 'knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity.'

*Id.* at 1291.

7

The *Rutgard* court noted that section 1957(a) "does not speak to the attempt to cleanse dirty money by putting it in a clean form and so disguising it" but "applies to the most open, above-board transaction." *Id.*  Because section 1957 does not require "[t]he intent to commit a crime or the design of concealing criminal fruits," it appears "easier to prove" on the one hand, but more difficult on the other hand, because it does not contain "references to 'the property involved' and the satisfaction of the statute by a design that 'in part' encompasses the intended result." *Id.*  The court further observed:

> [Section 1957] is a powerful tool because it makes any dealing with a bank potentially a trap for the drug dealer or any other defendant who has a hoard of criminal cash derived from the specified crimes.  If he makes a 'deposit, withdrawal, transfer or exchange' with this cash, he commits the crime; he's forced to commit another felony if he wants to use a bank.  This draconian law, so powerful by its elimination of criminal intent, freezes the proceeds of specific crimes out of the banking system.  As long as the underlying crime has been completed and the defendant 'possesses' the funds at the time of deposit, the proceeds cannot enter the banking system without a new crime being committed.

*Id.* (citations omitted).  "Such a powerful instrument of criminal justice should not be expanded by judicial invention or ingenuity.  We 'should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used in the statute.'"  *Id.* (quoting *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 250 (1952)).  Because of the differences between sections 1956 and 1957, the *Rutgard* court did not believe reliance on section 1956 tracing decisions was proper and criticized those courts that had done so.  *Id.* at 1292.

After recognizing that section 1957 could not "be made wholly ineffective by commingling," the *Rutgard* court explained what proof was required to prove a section 1957 violation:

> To prevail, the government need show only a single $10,000 deposit of criminally-derived proceeds.  Any innocent money already in the account, or later

8

> deposited, cannot wipe out the crime committed by the deposit of criminally-derived proceeds. Commingling with innocent funds can defeat application of the statute to a withdrawal of less than the total funds in the account, but ordinarily that fact presents no problem to the government which, if it has proof of a deposit of $10,000 of criminally-derived funds, can succeed by charging the deposit as the crime; or the government may prevail by showing that all the funds in the account are the proceeds of crime. [Citation.] Commingling will frustrate the statute if criminal deposits have been kept under $10,000. But that is the way the statute is written, to catch only large transfers. Moreover, if the criminal intent was to hide criminal proceeds, as would presumably be the case any time criminally derived cash was deposited with innocently derived funds to hide its identity, [section] 1956 can kick in and the depositor of amounts under $10,000 will be guilty of a [section] 1956 crime.

*Id.*

In sum, the *Rutgard* court, after noting section 1957 was a potentially draconian law because it eliminated criminal intent, concluded that in a section 1957 case involving commingled funds, the government could show that: (1) the defendant's entire business was illegal; (2) a single deposit of more than $10,000 in criminally-derived funds; or (3) all the funds were transferred out of the account.[2] The *Rutgard* court rejected the theory that proof of criminally-derived funds in an account creates a presumption that those funds are involved in a later transfer from the account. *Id.* at 1292-93. Applying its holding, the *Rutgard* court overturned the defendant's section 1957 conviction.

In *Rutgard*, the Ninth Circuit addressed squarely and flatly rejected the competing approach used by some Circuit Courts of employing a presumption of illegal taint in order to meet the element of "criminally derived property" under the statute (section 1957). Commenting on the Fourth Circuit's presumption approach created in *Moore*, 27 F.3d at 976-77, the Ninth Circuit stated as follows:

---

[2] As applied here, the Government could not establish that all of the funds in the SIAM escrow account were transferred out of the account. In fact, the Indictment alleges otherwise. Nor has the Government ever alleged, or could it possibly prove at trial, that the entirety of Weisberg's law practice and his dealings with SIAM was criminal in nature.

9

> The statute [1957] does not create a presumption that any transfer of cash in an account tainted by the presence of a small amount of fraudulent proceeds must be a transfer of these proceeds. Unlike [section] 1956, [section] 1957 does not cover any funds "involved." To create such a presumption in order to sustain a conviction under [section] 1957 would be to multiply many times the power of that draconian law. It would be an essay in judicial lawmaking, not an application of the statute.

*Id.* at 1292-93; *see also United States v. Hanley*, 190 F.3d 1017 (9th Cir. 1999) (apply *Rutgard* and rejecting the government's argument that tracing is not required for a section 1957 conviction when the government proves that the monetary transfers generally involved fraudulently procured funds).

In *United States v. Loe*, 248 F.3d 449 (5th Cir. 2001), the Fifth Circuit also rejected the approach of presuming that all commingled funds are tainted such that any financial transaction involving a non-segregated account meets the "criminally derived property" element under the statute. In *Loe*, the Fifth Circuit overturned the defendant's section 1957 convictions and held that "[s]ince there was enough clean money in the account to cover the $776,742 transfer, the rule of *Davis* mandates reversal of counts 22-24. No reasonable juror could conclude that these money laundering convictions were warranted beyond a reasonable doubt." *Id.* (citations omitted).

In reaching its holding overturning the convictions, the Fifth Circuit applied its earlier holding in *Davis*, *supra*: "[W]hen the aggregate amount withdrawn from an account containing commingled funds exceeds the clean funds, individual withdrawals may be said to be of tainted money, even if a particular withdrawal was less than the amount of clean money in the account." *Davis*, *supra*, 226 F.3d at 357. Relevant here, however, the *Loe* court underscored that the converse of the *Davis* holding is equally true: "[W]here an account contains clean funds

10

sufficient to cover a withdrawal, the Government can not prove beyond a reasonable doubt that the withdrawal contained dirty money." *Loe*, 248 F.3d at 467 (citation omitted).

A relatively recent reported decision out of the Central District of California partially overturned a jury's verdict finding that the defendant was guilty of multiple counts of violating 18 U.S.C. § 1957. *See United States v. Yagman*, 502 F. Supp.2d 1084 (C.D. Cal. 2007). In *Yagman*, the District Court began with the basic premise that "[w]here the transaction involves criminal proceeds that have been commingled with innocent funds, the Ninth Circuit imposes a tracing requirement; the government must trace each of the alleged monetary transactions to criminally-derived proceeds." *Id*. at 1087 (citations omitted). The District Court then noted that some other Circuits had previously adopted a rule or presumption that "once criminally-derived funds were deposited, any transfer from the account would be presumed to involve them for the purpose of applying 1957." *Id.* (citations omitted). The District Court then noted that the Ninth Circuit has now expressly rejected adopting any such rule or presumption for the reasons set forth in detail in *Rutgard*, which was decided <u>after</u> most of the other Circuit Court decisions adopting the presumption of illegality. *Id.* at 1089 ("*Rutgard* and *Hanley* clearly establish that a court may not employ any presumption in determining the source of the specific transaction. The Court sees no distinction between presuming that a withdrawal contained tainted funds and presuming that an earlier withdrawal contained untainted funds. In both circumstances there are no indicia (in the absence of tracing) to suggest whether the transaction involved tainted or untainted funds, and both situations implicate the same concerns which motivated the Ninth Circuit's refusal to adopt a presumption."). Applying the teachings of *Rutgard*, the District Court analyzed each of the monetary transactions and found that "[a]bsent a presumption, no rational fact-finder could determine whether the transaction involved criminally-derived

11

proceeds or innocent funds. Therefore, the Court finds that the evidence established at trial does not establish beyond a reasonable doubt that the monetary transactions at issue in count nine involved at least $10,000 in criminally derived proceeds." *Id.*

Here, without the benefit of a presumption that any withdrawal from the SIAM escrow account included "dirty" money, the Government could never prove that the $200,000 at issue in count eleven was "criminally derived property," a necessary element of a section 1957 offense. There has been no allegation from the Government in this case that the $30 million deposited in escrow with Weisberg by SIAM was criminally derived property. Rather, the allegation is that approximately $1.6 million was "criminally derived property" resulting from Weisberg's alleged scheme to defraud SIAM – the sum total of the interest accrued in the account over time. As the records produced by the Government to Weisberg make plain, only a very small fraction of that $30 million was ever transferred out of the escrow account by Weisberg upon SIAM's explicit instructions (no more than approximately $750,000 at the very most during the entire escrow period).

The Government charges Weisberg in count eleven with violating section 1957 with respect to a financial transaction involving the sum of $200,000 in June of 2007. There can be no dispute, however, that even accepting the Government's allegations as true, the amount of "clean" money in the escrow account in or about June 2007 (some amount in excess of $28 million) greatly exceeded the amount of "dirty" money in that account (some amount less than $1.6 million). Under the *Davis* and *Rutgard* principles, because the amount of "clean" money exceeded the amount of "dirty" money in the account by a considerable multiple, the Government simply could never prove beyond a reasonable doubt that the $200,000 identified in count eleven was "criminally derived property" as required under the statute (18 U.S.C. § 1957).

12

### C. This Court should not follow the approach taken by the Third, Fourth and Tenth Circuits.

The approach taken by the Tenth, Fourth and Third Circuits, which employs a presumption contrary to that employed in *Rutgard*, *Hanley*, *Loe* and *Davis*, is based primarily on section 1956 cases, is inconsistent with the plain language and purpose of section 1957, and has been persuasively rejected by the Ninth and Fifth Circuits, among other courts that have carefully considered the issue.

Moreover, the presumption employed in *Sokolow*, *Moore* and *Johnson* may be constitutionally infirm. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (holding that jury instructions creating a conclusive presumption against the defendant as to an element of a crime violates the Fourteenth Amendment); *Ulster v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.344 (1985). According to the Supreme Court's overall teachings in the area of criminal presumptions, a conclusive or irrefutable presumption operating against a criminal defendant is unconstitutional. *See Tot v. United States*, 319 U.S. 463, 468-96, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). The presumption employed in the *Moore* line of cases, which presumes an element against the criminal defendant facing a section 1957 violation – that the money transferred from the non-segregated account constitutes "criminally derived property" – is therefore unconstitutional.

### D. Even if this Court applied a proportionality rule as discussed in *Loe*, the section 1957 count still must be dismissed.

In *Loe*, the Fifth Circuit discussed in *dicta* (in a footnote) the possibility of an alternative approach, which it called the "proportionality" rule. *Loe*, *supra*, 248 F.3d at 467 n. 81. "Under such a rule, courts would treat any withdrawal from an account as containing proportional

13

fractions of clean and dirty money." *Id.* The *Loe* court further commented in *dicta* on the proportionality rule as follows:

> A proportionality rule would avoid some of the oddities associated with the *Davis* approach. Under *Davis,* if aggregate withdrawals are less than the amount of clean funds in the account, the statute is not violated. However, once withdrawals exceed the clean funds in the account, all subsequent transactions (including the transaction by which the defendant exceeds the clean-funds threshold) are transformed into "dirty" transfers warranting conviction. A proportionality rule avoids this somewhat mechanistic result.
>
> Moreover, a proportionality rule is more sensitive to the fungible nature of money. Whereas the *Davis* rule engages in a presumption that clean money is spent before dirty money, a proportionality rule recognizes that a withdrawal mirrors the sources of the money in the account. If the account is the product of clean and dirty money, a withdrawal should reflect this arrangement in equal proportions.
>
> Finally, this rule would be more faithful to the plain language of the statute. The *Davis* rule allows a court to look at the total number of withdrawals from an account, aggregating a series of transactions. *See United States v. Davis,* 226 F.3d 346, 357 (5th Cir. 2000); *see also United States v. Heath,* 970 F.2d 1397, 1404 (5th Cir. 1992). However, section 1957 imposes liability on a transaction-by-transaction basis. *See* 18 U.S.C.A. § 1957 ("Whoever ... knowingly engages ... in a monetary transaction in [dirty money] of a value greater than $10,000 ... shall be punished."). A proportionality rule would avoid the aggregation mechanism condoned in *Davis* and more accurately reflect the language and purpose of the statute. However, as the *Davis* rule is binding on this panel, *see Broussard v. Southern Pac. Transp. Co.,* 665 F.2d 1387, 1389 (5th Cir.1982) (en banc), we must apply it to the case at bar, leaving change to a case appropriately before the en banc court.

*Id.*[3]

Even if this Court believes that the Second Circuit would embrace a proportionality rule, which has never been adopted by a Circuit Court, as opposed to following the Ninth Circuit's approach as set forth in *Rutgard*, there is still no possible way for the Government ever to prove beyond a reasonable doubt that Weisberg is guilty of violating section 1957. The SIAM escrow

---

[3] The Fifth Circuit declined to rehear the case *en banc*, 255 F.3d 449 (2001), and the United States Supreme Court denied *certiorari*. 122 S.Ct. 397, 534 U.S. 974, 151 L.Ed.2d 301 (2001). This Court should not adopt an approach that has not been sanctioned by even a single Circuit Court.

14

account was funded with $30 million. According to the Government's allegations, Weisberg earned approximately $1.6 million in interest from his alleged scheme to defraud SIAM, which is approximately 5% of the total amount of funds deposited in the account. According to count eleven, the alleged section 1957 violation involved $200,000. Applying the proportionality rule, 5% of $200,000 is $10,000.00, which is below the "value greater than $10,000" threshold amount for a section 1957 violation.[4]

*   *   *

For the reasons stated herein, count eleven should be dismissed as a matter of law.

Dated: New York, New York
November 15, 2010

Respectfully Submitted,

**BAKER & HOSTETLER LLP**

/s/Ryan P. Farley
George A. Stamboulidis
Lauren J. Resnick
Ryan P. Farley

45 Rockefeller Plaza
New York, New York  10111
(212) 589-4200

*Attorneys for Martin E. Weisberg*

---

[4] More accurately, if we were to reduce the $30 million originally deposited in escrow by the amounts withdrawn from the account up until June 1, 2007, and also subtract a proportionate amount of "dirty" money from the interest accrued prior to those withdrawals for each transfer out of the account before June 1, 2007, the Government would still be left with an amount well under the greater than $10,000 threshold for this crime under the proportionate share approach for the June 2007 $200,000 withdrawal.