UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA

-against-

MARTIN WEISBERG,

                      Defendant.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CR-347 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Martin Weisberg ("Weisberg") is charged with ten counts of wire fraud and one count of money laundering. (Ind. (Docket Entry # 1).) At issue in this opinion are subpoenas duces tecum, issued by the court on January 21, 2011, on Weisberg's motion. (Docket Entry ## 122-1, 124-1.) Non-parties Baker & McKenzie LLC ("B&M"), Crowell & Moring LLP ("Crowell"), and Peter Ginsberg, Esq. ("Ginsberg") move to quash these subpoenas. (Docket Entry ## 122, 123, 124.) Also at issue here is Weisberg's request that this court issue letters rogatory to the countries of Anguilla and the Bahamas. For the reasons stated below, the court grants in part and denies in part the motions to quash the Rule 17(c) subpoenas and declines to issue the letters rogatory.[1]

**I.    BACKGROUND**

The charges in the Indictment involve companies operating in Anguilla and the Bahamas: JMV Fixed Income Arbitrage Performance Partners, Ltd. ("JMV"), Regenmacher Holdings Limited ("Regenmacher"), and SIAM Capital Management, Ltd. ("SIAM") (collectively, the

---

[1] Weisberg has moved to dismiss Count Eleven of the Indictment. (Docket Entry # 102.) This motion will be addressed in a subsequent opinion. This opinion also does not address the extent to which Weisberg may introduce at trial evidence that is already in his possession but that is protected by third-party claims of privilege. Weisberg has moved the court to find that such evidence would be admissible. (Docket Entry # 53.) This issue will also be addressed in a subsequent opinion.

1

"SIAM Entities"). (Ind. ¶¶ 1-3.) According to the Indictment, the SIAM Entities agreed, in an escrow agreement dated August 11, 2006 ("the Escrow Agreement"), to have $30 million deposited into an escrow account (the "Escrow Account") "for future use by JMV in the event it incurred expenses and obligations related to a legal dispute." (Id. ¶ 4.) The SIAM Entities hired Weisberg, then a lawyer for B&M, to be the escrow agent, and Weisberg served as such from August 11, 2006 until October 29, 2007. (Id. ¶ 5.)

Under the Escrow Agreement, Weisberg was to deposit the $30 million into either a non-interest-bearing bank account or an Interest on Lawyer Account ("IOLA"). (Id. ¶ 6.)[2] Weisberg assured representatives of the SIAM Entities that he would deposit the money in this fashion. (Id. ¶ 7.) The Government alleges, however, that Weisberg "secretly" deposited the money into an interest-bearing account instead, resulting in the accrual of $1.6 million in interest over the course of the scheme. (Id.) Instead of maintaining the interest money for the SIAM Entities, Weisberg, without the knowledge or authorization of the SIAM Entities, transferred $1.3 million out of the Escrow Account, and appropriated the money for his own private purposes. (Id. ¶ 8.) To conceal this misappropriation, Weisberg allegedly sent letters to a representative of the SIAM Entities misstating the Escrow Account balance and concealing the fact that the account was earning interest. (Id. ¶ 9.)

According to the statement of facts set forth by Weisberg in a previous memorandum of law,[3] the SIAM Entities provided investment management and financial services. (Sept. 23, 2009 Memorandum in Support ("Sept. 2009 Br.") (Docket Entry # 50) at 1.) In 2004, the SIAM Entities agreed to invest $50 million (the "JMV Investment") on behalf of Liechtenstein-based

---

[2] An IOLA is an interest-bearing escrow account whose interest, under New York law, is to be remitted to a fund maintained for the purpose of legal assistance to people with low incomes. (Ind. ¶ 6.)

[3] This brief was submitted by Weisberg's prior counsel in support of a now-resolved motion for discovery from the Government.

entities controlled by an Austrian Bank, BAWAG P.S.K. ("BAWAG").  (Id. at 1, 4-5.)  One of those Liechtenstein entities was called Bagani Stiftung ("Bagani").  (Id.)

In July 2006, someone named Thomas Hackl contacted Weisberg in connection with retaining Weisberg and B&M to represent the SIAM Entities in a legal dispute between the SIAM Entities and BAWAG.  (Id. at 4-5.)  In connection with this dispute, Weisberg and his partner, Richard A. DePalma ("DePalma"), set up the $30 million Escrow Account "on behalf of" the SIAM Entities, "among others."  (Id. at 2, 5.)  The $30 million Escrow Account "represented a portion" of the $50 million JMV Investment.  (Id. at 5.)  There is currently civil litigation pending in an Anguillian court between Bagani and the SIAM Entities with respect to the ownership of the $50 million JMV Investment.  (Id. at 7.)

After Weisberg was indicted in an unrelated case in August 2007, the SIAM Entities terminated their relationship with Weisberg and B&M.  (Id.)

Weisberg has represented that his defense at trial will be that someone with authority over the Escrow Account authorized Weisberg to place the escrow money in an interest-bearing account and authorized Weisberg to appropriate that interest.  In order to support this defense, Weisberg seeks evidence from several non-parties: Weisberg's previous employer B&M; Crowell, which also previously represented the SIAM Entities; Ginsberg, who currently represents the SIAM Entities; and the SIAM Entities themselves.

In a July 16, 2010 letter, Weisberg requested that the court issue subpoenas duces tecum, under Federal Rule of Criminal Procedure 17(c), directing those non-parties to disclose various documents and records.  (Docket Entry # 81.)  The court issued the subpoenas, and B&M, Crowell, and Ginsberg moved to quash them, arguing that the requested evidence was protected by the attorney-client and attorney work product privileges, and that Weisberg had failed to meet

the requirements of Rule 17(c). (Docket Entry ## 84, 93, 94.) In a September 10, 2010 letter, Weisberg informed the court that Ginsberg, counsel for the SIAM Entities, had refused to accept service of the Rule 17(c) subpoena directed to the SIAM Entities, which are not in the court's jurisdiction. (Docket Entry # 88.) Therefore, Weisberg moved the court to issue letters rogatory to the courts of Anguilla and the Bahamas, in order to request their assistance in obtaining the requested documents from the SIAM Entities. (Id.) Weisberg submitted revised letters rogatory on November 29, 2010. (Docket Entry # 105.)

In a December 3, 2010 memorandum and order ("December 3 Order"), the court quashed the subpoenas, finding that they requested the kind of broad discovery permissible in civil actions, but not criminal actions, and therefore did not meet the requirements of Rule 17(c). (Docket Entry # 108.) The court also denied Weisberg's motion for the issuance of letters rogatory, which were similarly overbroad. (Id.) The court noted that Weisberg would be permitted to make future Rule 17(c) subpoena requests, but that such requests "must identify specific documents or drastically narrowed groups of documents." (Id. at 4.) Further, the court noted, Weisberg, in making any future requests for letters rogatory, would have to show not only that the requirements of Rule 17(c) had been met, but also that "the evidence sought cannot be obtained through other means and that it is sufficiently important to justify delaying trial indefinitely while the time consuming and uncertain letter rogatory process takes its course." (Id.)

In a January 7, 2011 ex parte submission to the court, Weisberg requested that the court issue new Rule 17(c) subpoenas to B&M, Crowell, and Ginsberg, and also issue newly formulated letters rogatory to Anguilla and the Bahamas, all requesting a narrower range of items than the originals had. In the January 7 ex parte submission, Weisberg explained in more

4

detail why the requested items were necessary to his defense. The court issued the new Rule 17(c) subpoenas on January 21, 2011. In an order issued the same day ("January 21 Order"), the court ordered Weisberg to show cause why the new letters rogatory should be issued. (Docket Entry # 119.) The court cautioned that Weisberg "should demonstrate that (1) the documents requested are necessary to his defense, especially in light of the potentially similar evidence contained in the Rule 17(c) subpoenas; (2) the issuance of letters rogatory for the production of documents is appropriate in a criminal case, under the specific circumstance found here; and (3) the receiving countries are likely to timely comply with the actual letters rogatory requests made here. Weisberg should point the court to legal authority specifically supporting each of these showings." (Id. at 1.) Weisberg responded with another ex parte submission, dated February 4, 2011. On February 25, 2011, B&M, Crowell, and Ginsberg submitted motions to quash the new Rule 17(c) subpoenas. (B&M Motion (Docket Entry # 122); Ginsberg Motion (Docket Entry # 123); Crowell Motion (Docket Entry # 124).)

  B&M has indicated that it has turned over to Ginsberg all of the records and documents in its possession responsive to the Rule 17(c) subpoenas. (B&M Motion at 2, 3-4.) Crowell has also indicated that it has turned over to Ginsberg all responsive records and documents, except for "limited billing files." (Crowell Motion at 1, 4.) Furthermore, Ginsberg has indicated that, "in the spirit of cooperation," he was in the process of reviewing and turning over to Weisberg any "documents and communications" in his possession, including documents provided to him by B&M, that "concern the establishment and administration of the escrow account." (Ginsberg Motion at 4.) In their March 9, 2011 response, Weisberg's counsel indicated they were "in receipt of initial productions" from Ginsberg "in response to our Rule 17(c) subpoena to Baker & McKenzie." (Docket Entry # 125 at 1.)

5

## II.    DISCUSSION

### A.    Rule 17(c) Subpoenas

#### 1.    Applicable Law

##### a.    *Requirements of Rule 17(c)*

The Supreme Court has warned that a Rule 17(c) subpoena "[is] not intended to provide a means of discovery for criminal cases." United States v. Nixon, 418 U.S. 683, 698 (1974); see also United States v. Cherry, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) ("Rule 17(c) can be contrasted with the civil rules which permit the issuance of subpoenas to seek production of documents or other materials which, although not themselves admissible, could lead to admissible evidence."); United States v. Cuthbertson, 630 F.2d 139, 146 (3d Cir. 1980) (cautioning against the use of 17(c) subpoenas as a "broad discovery device").

A Rule 17(c) subpoena must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." Nixon, 418 U.S. at 699-700.  The moving party must show:

> "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'"

Id.  Under Rule 17(c)(2), courts may quash subpoenas that are "unreasonable or oppressive" or where it is clear that the party seeking production has not met its burden of demonstrating that the threshold requirements for issuance have been met.  See id. at 701; In re Irving, 600 F.2d 1027, 1034 (2d Cir. 1979).

##### b.    *Attorney-Client and Attorney Work Product Privileges*

The non-parties object that much of what Weisberg requests in his subpoenas is protected by either the attorney-client or attorney work product privilege.  The attorney-client privilege

6

applies to any communication (1) between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice. In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007). The attorney work product doctrine provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation. In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007). The work product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3), which generally protects such material from production. Under subsection (ii) of that rule, an exception to the non-discoverability of work product exists where the party seeking production "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." The work product doctrine applies in criminal cases as well as in civil cases. See United States v. Nobles, 422 U.S. 225, 236 (1975).

There is a dearth of binding authority regarding the balance that must be struck between a criminal defendant's right to subpoena evidence from third parties under Rule 17(c) and those third parties' valid assertion of attorney-client or work product privilege. However, it is clear that criminal defendants have a constitutional right to present a complete defense. See, e.g., In re Terrorist Bombings of U.S. Embassies in East Africa, 552 F.3d 93, 126 (2d Cir. 2008); United States v. Abcasis, 45 F.3d 39, 42 (2d Cir. 1995); see also Cotto v. Herbert, 316 F.3d 198, 205-06 (2d Cir. 2003) ("It is, of course, well established as a fundamental matter of due process that the defendant in a criminal case has the right to present a defense, that is, to present to the jury admissible evidence that might influence the determination of guilt."). In certain cases, a criminal defendant's constitutional right to present a defense may outweigh a third party's right to assert privilege. See Fed. R. Evid. 501 ("*Except as otherwise required by the Constitution of*

7

*the United States* . . . the privilege of a witness [or] person . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.") (emphasis added).

Where a criminal defendant seeks to subpoena work product, he can overcome the privilege by demonstrating, as in the civil context, a "substantial need" for the requested items and that he "cannot, without undue hardship, obtain their substantial equivalent by other means." See United States v. James, No. 02-CR-778 (SJ), 2007 WL 1579980, at *2 (E.D.N.Y. May 31, 2007); United States v. Arias, 373 F. Supp. 2d 311, 313 (S.D.N.Y. 2005); United States v. Jacques Dessange, Inc., No. 99-CR-1182 (DLC), 2000 WL 310345, at *2 (S.D.N.Y. Mar. 27, 2000); see also United States v. Harry, No. 86-CR-766 (TCP), 1987 WL 30695, at *1 (E.D.N.Y. Dec. 23, 1987) (district court "must weigh the evidentiary value of the subpoenaed [material] against [the] work-product claim"). The "substantial need" exception to the work product privilege applies only where the defendant seeks material that "recites factual matters," and does not apply where the defendant seeks an attorney's "opinions, conclusions, mental impressions or legal theories." Jacques Dessange, 2000 WL 310345, at *2 (citing Upjohn Co. v. United States, 449 U.S. 383, 401 (1981)).

As for the attorney-client privilege, the Supreme Court has left open the question of whether it may be overcome, "in exceptional circumstances," by a criminal defendant's constitutional right to present a defense. See Swidler & Berlin v. United States, 524 U.S. 399, 408 n.3 (1998); see also United States v. Sattar, No. 02-CR-395 (JGK), 2003 WL 22137012, at *17-21 (S.D.N.Y. Sept. 15, 2003) (requiring further development of the record to determine whether "exceptional" circumstances existed such that the Constitution required that attorney-client- and work-product-privileged material be turned over). Other courts have addressed the

admissibility of material protected by the attorney-client privilege where that material is already in the possession of the criminal defendant. In such cases, the defendant, in order to introduce the privileged material into evidence, must demonstrate that the evidence is so valuable that to prohibit its admission would violate the defendant's constitutional right to present a defense. See United States v. W.R. Grace, 439 F. Supp. 2d 1125, 1140-42 (D. Mont. 2006); United States v. Renzi, No. 08-CR-212 (DCB) (BPV), 2010 WL 582100, at *11 (D. Ariz. Feb. 18, 2010) (citing W.R. Grace); see also Morales v. Portuondo, 154 F. Supp. 2d 706, 730-31 (S.D.N.Y. 2001) (finding, in a habeas corpus proceeding, that evidence protected by the attorney-client privilege was admissible since, in light of the "remarkable circumstances," its non-admission would render that proceeding "fundamentally unfair").

In order to determine whether a particular item of evidence is privileged and, if so, whether it is nevertheless so important to the defense that its disclosure is constitutionally required, it is appropriate for the district court to review, in camera, each item in question. See United States v. Burke, 700 F.2d 70, 78 n.9 (2d Cir. 1983) (in camera review appropriate to determine applicability of reporter's privilege); United States v. Vasquez, 258 F.R.D. 68 (E.D.N.Y. 2009) (same for law enforcement privilege); W.R. Grace, 439 F. Supp. 2d at 1142-43 (same for attorney-client privilege).

### 2. Weisberg's Specific Requests

Weisberg's Rule 17(c) subpoenas request several items or groups of documents. The court will address the requests in turn.

As noted above, B&M has indicated that it has produced all documents responsive to the subpoenas to Ginsberg, who has already begun to produce some of the requested documents to Weisberg. In the interests of streamlining this process, the court will not issue any subpoenas to

9

B&M for material that is in Ginsberg's possession. B&M's motion to quash is therefore granted. See Nixon, 418 U.S. at 699 (Rule 17(c) subpoena only appropriate for material "not otherwise procurable"). Of course, if it becomes apparent that material to which Weisberg is entitled is in B&M's possession, and not in Ginsberg's, the court, at Weisberg's request, will consider issuing another subpoena to B&M. For the same reason, Crowell's motion to quash is granted as well, except to the extent that the "limited billing files" it retains in its possession are responsive to the requests discussed in subsection (b), *infra*.

a. *All Documents Relating to the Escrow Account*

Weisberg requests "[a]ll documents, electronically stored information including metadata, and objects (hereinafter 'documents') concerning and relating to the creation, maintenance, terms, conditions and termination" of the Escrow Account. (See Docket Entry ## 122-1, 124-1; Ginsberg Motion at 1-2.) In other words, Weisberg demands all documents and material in any way relating to the Escrow Account. This request is insufficiently focused on documents that will be relevant to Weisberg's defense, and Weisberg further fails to demonstrate that responsive documents would be admissible. The request therefore fails to meet the Nixon requirements of relevancy, specificity, and admissibility. The motions to quash are therefore granted with respect to this request. See United States v. Louis, No. 04-CR-203 (LTS), 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005) (rejecting as too broad a Rule 17(c) subpoena requesting "any and all" documents relating to several categories of subject matter).

b. *Billing and Appointment Records*

Weisberg requests from the non-parties "[a]ll billing records, time entries and invoices" for Weisberg, DePalma, and Ginsberg, generated between January 2004 and January 2008, and related to work performed by those individuals "for SIAM, JMV or Regenmacher concerning the

10

creation, maintenance, terms, conditions and termination of the escrow account." (See Docket Entry ## 122-1, 124-1; Ginsberg Motion at 1-2.) Weisberg also requests all "calendars, appointment logs, diaries, and travel and meeting records" of Weisberg, DePalma, and Ginsberg, "relating to the creation, maintenance, terms, conditions, and termination" of the Escrow Account, including any records of meetings or communications between Weisberg, DePalma, or Ginsberg and representatives of the SIAM Entities or Thomas Hackl. (Id.) Ginsberg's motion to quash with respect to these requests is denied, as is Crowell's to the extent the "limited billing files" it retains are responsive.[4]

Based on Weisberg's ex parte submissions, and without revealing the details of those submissions, it appears that Weisberg, in connection with these requests, intends to corroborate his defense by showing that Weisberg, DePalma, and Ginsberg all worked on the Escrow Account and communicated at certain times with certain individuals—including the individual or individuals who, Weisberg will separately claim, authorized his conduct. In other words, Weisberg apparently plans to supplement his authorization defense with evidence showing that certain communications occurred, and that these were likely the same communications in which the authorization took place or was discussed. Weisberg is entitled to corroborate his defense with such circumstantial evidence. See Justice v. Hoke, 90 F.3d 43, 49-50 (2d Cir. 1996) (right to present a defense includes right to present circumstantial evidence). Thus, Weisberg has met the relevancy requirement of Rule 17(c). The requested material is also likely admissible as business records.

---

[4] The subpoenas intended for Crowell and Ginsberg appear to request the records of meetings and communications between Ginsberg and Hackl, even where such meetings or communications are *not* related to the Escrow Account. The motions to quash are granted to the extent the subpoenas do indeed request such non–Escrow Account related records.

As for the specificity requirement, it is true that Weisberg has not pointed to specific billing or meeting records that will support the defense. However, a defendant need not have prior knowledge of specific documents to meet the specificity requirement of Rule 17(c). See United States v. Rajaratnam, No. 09-CR-1184 (RJH), 2011 WL 507086, at *1 n.1 (S.D.N.Y. Feb. 15, 2011) ("[I]n the context of a subpoena to a third party . . . , requiring the defendant to specify precisely the documents he wants without knowing what they are borders on rendering Rule 17 a nullity."); United States v. W.R. Grace, 434 F. Supp. 2d 869, 873 (D. Mont. 2006) (Rule 17(c) subpoena should be issued "where the movant knows that the material sought exists and can identify it with specificity, even if he is ignorant of the exact content of the material"). Weisberg's request is sufficiently narrowly focused on a group of records likely to contain helpful documents, and thus he cannot be said to be engaging in a "fishing expedition." See In re Irving, 600 F.2d 1027, 1034 (2d Cir. 1979) (criminal defendant's subpoena requesting union sign-up cards from non-party met Rule 17(c) requirements since, "*if* the cards are in fact forged or otherwise fraudulent, they *may* provide the defendants with a basis for asserting an entrapment defense") (emphasis added); Rajaratnam, 2011 WL 507086, at *2 (Rule 17(c) subpoena request for "[a]ll documents or other communications" made by or between several named parties, and reflecting certain payments, was sufficiently specific, where responsive documents would have "potential evidentiary uses").

Furthermore, these records—reflecting the fact that attorneys worked on the Escrow Account and communicated or met with certain individuals, but not revealing the contents of the attorneys' advice—are presumably not privileged. See Lefcourt v. United States, 125 F.3d 79, 86 (2d Cir. 1997) ("As a general rule, a client's identity and fee information are not privileged."); Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 456 (2d Cir. 1989) (date and fact of meeting

12

between attorneys and client not privileged). If Ginsberg or Crowell believe that any responsive records are in fact privileged, they should submit such records for the court to review *in camera*, along with a detailed explanation as to why they believe the records are privileged. A mere privilege log will not suffice.

      c.  *Requests for Specific E-mails and Document Histories*

Three of Weisberg's requests to B&M refer to specific documents. The motions to quash with respect to these requests are denied. However, these documents are now presumably in Ginsberg's possession. Therefore, Weisberg should direct any revised Rule 17(c) subpoenas to Ginsberg.

First, Weisberg requests "any e-mails, including metadata,[5] from Richard A. De Palma to any person or entity forwarding the e-mail and attachment or otherwise concerning the e-mail and attachment dated September 21, 2006 (at 11:29 PM) from Mr. De Palma [or] to Mr. De Palma, with the subject 'SIAM Escrow Agreement,' produced by the government at MW USAO 1219-1229 (also bearing Bates-stamp numbers DOJ 007907-7917)." (Docket Entry # 122-1.)

Second, Weisberg requests "[t]he document history detail for the Escrow Agreement, dated August 11, 2006 (Baker & McKenzie LLP document number NYCDMS/1008251), all documents sufficient to identify the underlying document referred to in the document history detail produced by the Government at MW USAO 1340-1343 (also bearing Bates-stamp numbers DOJ 008024-8027), the identity of all individuals who edited, printed, e-mailed, or otherwise accessed the document this document history detail refers to, and copies of each e-mail sent attaching the underlying document as indicated in the document history." (Id.)

---

[5] The court notes that B&M objected that the term "metadata" used by Weisberg is "vague and ambiguous." (B&M Motion at 3.) In any new Rule 17(c) subpoena using the term "metadata," Weisberg shall explain what categories of records or information the term "metadata" encompasses.

13

Third, Weisberg requests "[t]he document history detail for any letters written and saved on the Baker & McKenzie LLP system wherein Martin E. Weisberg instructs transfer from the escrow account to any other account, including, but not limited to, a letter to JPMorgan Chase dated December 7, 2006 (Baker & McKenzie document number NYCDMS/1023270), so as to identify the identity of all individuals who edited, printed, e-mailed or otherwise accessed the letter, and copies of each e-mail, if any, sent attaching the letter, and whether any security restrictions [were] in place thereon." (Id.)

Weisberg, in his ex parte submissions, has shown sufficient reason why these items would be admissible and relevant to his defense. To the extent Ginsberg believes that responsive documents are privileged, he should submit the documents for the court to review *in camera*, along with an explanation as to why he believes any privilege applies. Again, a privilege log will not suffice.

### d.   *Documents Listed on the B&M Privilege Log*

Finally, Weisberg requests from B&M a specific list of documents from a privilege log created by B&M—documents whose common characteristic, based on the descriptions provided in the log, is that they relate to the Escrow Account. (Docket Entry # 122-1.) Weisberg further requests any additional documents on the privilege log "relating to the creation, maintenance, terms, conditions and termination" of the Escrow Account. (Id.) Essentially, Weisberg here repeats his first request for any documents relating in any way to the Escrow Account. The only difference is that the documents requested here have been designated privileged by B&M, which of course weighs against ordering their disclosure. Because this request fails to meet the relevance, specificity, or admissibility requirements of Rule 17(c), the motions to quash this request are granted.

14

**B.     Letters Rogatory**

Letters rogatory are simply a means to obtain evidence to which a party is otherwise entitled.  See, e.g., United States v. Korogodsky, 4 F. Supp. 2d 262, 265 (S.D.N.Y. 1998).  Thus, to the extent Weisberg's requests would be impermissible under Rule 17(c), they are impermissible in the context of letters rogatory.

First, the court notes that Weisberg has failed adequately to respond to the court's instruction that Weisberg demonstrate, by citing "legal authority," that "the receiving countries are likely to timely comply" with the letters rogatory.  (January 21 Order at 1.)  Weisberg has not pointed the court to any law or practice of Anguilla or the Bahamas indicating likely compliance.

The letters rogatory prepared by Weisberg request many of the same documents and records requested in the Rule 17(c) subpoenas.  Weisberg again asks for all documents, held by the SIAM Entities and people related to the SIAM Entities, having anything to do with the Escrow Account.  Since Weisberg is not entitled to such broad production under Rule 17(c), he is not entitled to such broad letters rogatory.  Weisberg further requests "all" documents relating to specific financial transactions, but he has not explained, including in his ex parte submissions, why such documents would be relevant to his defense.

Weisberg also requests billing and meeting records similar to those requested in the Rule 17(c) subpoenas.  While the court finds that such requests are appropriate in the Rule 17(c) context, they are not, given the facts of this particular case, appropriate in the letters rogatory context.  As noted above, the court previously cautioned Weisberg that he would have to show that any evidence sought through letters rogatory was "sufficiently important to justify delaying trial indefinitely."  (December 3 Order at 4.)  The court further required that Weisberg demonstrate, in connection with any letters rogatory, that "the documents requested are

15

necessary to his defense, especially in light of the potentially similar evidence contained in the Rule 17(c) subpoenas." (January 21 Order at 1.) Weisberg has failed to make either showing. As discussed above, the billing and meeting records may be relevant, but they are likely to provide only peripheral, circumstantial support to Weisberg's defense.

Finally, Weisberg requests all documents, including various affidavits, submitted in the context of the litigation between Bagani and the SIAM Entities pending in the Anguillian court. Such a broad request constitutes a fishing expedition, prohibited in the Rule 17(c) context, and therefore prohibited in the context of letters rogatory. Furthermore, Weisberg has made no showing that such documents would be admissible.

For these reasons, Weisberg's request for letters rogatory is denied.

## III. CONCLUSION

For the foregoing reasons, the court GRANTS B&M's motion to quash and GRANTS in part and DENIES in part Ginsberg's and Crowell's motions to quash. In particular, the court DENIES Ginsberg's and Crowell's motions to quash as to the following documents and records:

- All billing records, time entries, and invoices for Weisberg, DePalma, and Ginsberg, generated between January 2004 and January 2008, and related to work performed by those individuals for the SIAM Entities concerning the creation, maintenance, terms, conditions, and termination of the Escrow Account.

The court further DENIES Ginsberg's motion to quash as to the following documents and records:

- All calendars, appointment logs, diaries, and travel and meeting records of Weisberg, DePalma, and Ginsberg, relating to the creation, maintenance, terms, conditions, and termination of the Escrow Account, including any records of meetings or communications between Weisberg, DePalma, or Ginsberg and representatives of the SIAM Entities or Thomas Hackl.

- Any e-mails, including metadata (which term Weisberg should define), from DePalma to any person or entity forwarding the e-mail and attachment or otherwise concerning the e-mail and attachment dated September 21, 2006 (at

16

- 11:29 PM) from DePalma or to DePalma, with the subject "SIAM Escrow Agreement," produced by the government at MW USAO 1219-1229 (also bearing Bates-stamp numbers DOJ 007907-7917).

- The document history detail for the Escrow Agreement, dated August 11, 2006 (B&M document number NYCDMS/1008251), all documents sufficient to identify the underlying document referred to in the document history detail produced by the Government at MW USAO 1340-1343 (also bearing Bates-stamp numbers DOJ 008024-8027), the identity of all individuals who edited, printed, e-mailed, or otherwise accessed the document this document history detail refers to, and copies of each e-mail sent attaching the underlying document as indicated in the document history.

- The document history detail for any letters written and saved on the B&M system wherein Weisberg instructs transfer from the Escrow Account to any other account, including, but not limited to, a letter to JPMorgan Chase dated December 7, 2006 (B&M document number NYCDMS/1023270), so as to identify all individuals who edited, printed, e-mailed or otherwise accessed the letter, and copies of each e-mail, if any, sent attaching the letter, and whether any security restrictions were in place thereon.

The court GRANTS all motions to quash with respect to Weisberg's other Rule 17(c) requests.

After Ginsberg has completed the production of documents and communications that "concern the establishment and administration of the escrow account" (Ginsberg Motion at 4), Weisberg may submit, to the extent he believes it to be necessary, new Rule 17(c) subpoenas to Ginsberg and Crowell limited to the permissible requests specified above. The court DENIES Defendant's request for the issuance of letters rogatory.

SO ORDERED.

Dated: Brooklyn, New York  
      April 5, 2011

/S/ Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge